**CALIFORNIA HOSPITAL ASSOCIATION, California Restaurant Association, California Manufacturers Association, California Chamber of Commerce, Merchants & Manufacturers Association, and California Hotel & Motel Association, Plaintiffs/Appellees/Cross-Appellants,**

v.

**Patrick W. HENNING, Labor Commissioner, Department of Industrial Relations, State of California, Defendant/Appellant/Cross-Appellee.**

Nos. 83–6381, 83–6416.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 11, 1985.

Decided Sept. 6, 1985.

Richard Simmons, Musick, Peeler & Garrett, Los Angeles, Cal., for plaintiffs/appellees/cross-appellants.

John M. Rea, Chief Counsel, Dept. of Indus. Relations, San Francisco, Cal., Allen H. Feldman, Bette J. Briggs, U.S. Dept. of Labor, Washington, D.C., for defendant/appellant/cross-appellee.

Before BROWNING, Chief Judge, ALARCON, Circuit Judge, and SOLOMON, District Judge*.

JAMES R. BROWNING, Chief Judge:

Plaintiff trade associations brought this suit on behalf of employer members who have adopted vacation programs for their employees that forbid payment of prorated vacation pay, and forfeit vacation pay of employees not actively employed on specified eligibility dates (e.g., the anniversary of commencing employment). Plaintiffs sued the Labor Commissioner of the Department of Industrial Relations of the State of California seeking a declaration that a California statute barring forfeiture of vacation pay and requiring payment of a pro rata share of such pay on termination,[1] was preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001–1461 (1982).

## I.

Plaintiffs based their preemption argument on 29 U.S.C. § 1144 which provides that ERISA "supersede[s] any and all State laws insofar as they may ... relate to any employee benefit plan." "Employee benefit plans," include any "employee welfare benefit plan," id. § 1002(3), defined as "any plan, fund, or program ... established or maintained ... for the purpose of providing ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits." Id. § 1002(1) (emphasis added).

The Commissioner relied upon a United States Department of Labor regulation which excludes from the definition of "employee welfare benefit plans" various "payroll practices" including the "[p]ayment of compensation, out of the employer's general assets ... while an employee is on vacation," 29 C.F.R. § 2510.3–1(b)(3) (1983).[2] Plaintiffs' vacation programs fall within this regulation. If the regulation is valid they are not within ERISA and are not affected by ERISA's preemption provision. The sole question, therefore, is whether the regulation is valid.

---

* Honorable Gus J. Solomon, Senior Judge, United States District Court for the District of Oregon, sitting by designation.

1. California Labor Code § 227.3 as interpreted in *Suastez v. Plastic Dress-Up Co.*, 31 Cal.3d 774, 784, 183 Cal.Rptr. 846, 852, 647 P.2d 122, 128 (1982).

2. The relevant portions of the regulation read in full:

(b) **Payroll practices.** For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include—

(1) Payment by an employer of compensation on account of work performed by an employee, including compensation at a rate in excess of the normal rate of compensation on account of performance of duties under other than ordinary circumstances, such as—

(i) Overtime pay,
(ii) Shift premiums,
(iii) Holiday premiums,
(iv) Weekend premiums;

(2) Payment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment); and

(3) *Payment of compensation, out of the employer's general assets, on account of periods of time during which the employee,* although physically and mentally able to perform his or her duties and not absent for medical reasons (such as pregnancy, a physical examination or psychiatric treatment) *performs no duties;* for example—

(i) *Payment of compensation while an employee is on vacation* or absent on a holiday, including payment of premiums to induce employees to take vacations at a time favorable to the employer for business reasons,

(ii) Payment of compensation to an employee who is absent while on active military duty,

(iii) Payment of compensation while an employee is absent for the purpose of serving as a juror or testifying in official proceedings,

(iv) Payment of compensation on account of periods of time during which an employee performs little or no productive work while engaged in training (whether or not subsidized in whole or in part by Federal, State or local government funds), and

(v) Payment of compensation to an employee who is relieved of duties while on sabbatical leave or while pursuing further education.

29 C.F.R. § 2510.3–1(b) (emphasis added).

## II.

■ The agency's interpretation of the statute, embodied in the regulation, carries persuasive weight because it was formulated contemporaneously with the passage of ERISA. *Watt v. Alaska*, 451 U.S. 259, 272–73, 101 S.Ct. 1673, 1680–81, 68 L.Ed.2d 80 (1981). The sixth circuit has accorded the regulation "great weight" in interpreting the statute. *Abella v. W.A. Foote Memorial Hosp., Inc.*, 740 F.2d 4, 5 (6th Cir. 1984) (per curiam).

■ Plaintiffs invoke the doctrine that the "plain language" of the statute must be given effect "unless there is good reason to believe Congress intended the language to have some more restrictive meaning." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). The terms "employee benefit plan" and "plan ... providing ... vacation benefits" have no precise and immutable meaning that excludes the construction adopted by the regulation.

■ Where, as here, an agency has interpreted legislation it administers with respect to an issue as to which the legislation is silent or ambiguous, "the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. National Resources Defense Council, —— U.S. ——*, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984) (footnote omitted). Applying this standard in *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1502 (9th Cir.1985), we sustained another aspect of the regulation involved here because we found it to be a "reasonable" construction of ERISA. It is also a reasonable and permissible construction of the statute to exclude from its coverage, as this regulation does, programs providing for the traditional vacation during which the employee continues to receive ordinary wages paid from the general assets of the business.

## III.

In adopting ERISA Congress was primarily concerned with regulating private pension plans. Programs providing pensions and other fringe benefits multiplied when wage freezes were imposed during World War II and the Korean conflict. Such benefits "became a means of compensating workers in lieu of increased wages." S.Rep. No. 127, 93rd Cong., 1st Sess. 3 (1973), U.S.Code Cong. & Admin.News 1974, pp. 4639, 4839, *reprinted in* 1 *Legislative History of the Employee Retirement Income Security Act of 1974* 587, 589 (Comm.Print 1976) [hereinafter cited as *Leg.Hist.*]. A wide variety of methods developed for financing and administering programs to provide these benefits. Evidence before Congress reflected two principal abuses: mismanagement of funds accumulated to finance such benefits, and failure to pay employees the benefits promised.[3]

Traditional vacations during which the employer continued to pay the employees' regular wages presented neither of the evils Congress intended to address. Wages are ordinarily paid in cash out of the resources of the business whether the employee is at work or on vacation. There is no fund to administer and no special risk of loss or nonpayment. Nothing in the legislative history suggests Congress intended to regulate such payments.

In the regulation involved here, the Secretary sought to clarify the line between such payments and employee fringe benefits Congress intended to regulate, in terms of the occasion for the payment, the circumstances in which it was made, and its source.

---

3. *See, e.g.,* 120 Cong.Rec. 4279–80 (1974) (statement of Rep. Brademas), *reprinted in* 2 *Leg.Hist.* 3372–74; 120 Cong.Rec. 4277–78 (1974) (statement of Rep. Perkins), *reprinted in* 2 *Leg.Hist.* 3367–69; 119 Cong.Rec. 30,003 (1973) (statement of Sen. Williams), *reprinted in* 2 *Leg.Hist.* 1598–1600; *see also Private Welfare and Pension Plan Legislation: Hearings on H.R. 1045, H.R. 1046, and H.R. 16462 Before the General Subcommittee on Labor of the House Committee on Education and Labor,* 91st Cong., 1st and 2d Sess. 464, 470–72 (1970) (statement of George Shultz, Secretary of Labor).

Within three months of ERISA's adoption, the Secretary announced his intention of issuing regulations "that will make it clear that other programs, including certain employer practices ... under which employees are paid as a part of their regular compensation directly by the employer and under which no separate fund is established will not subject the employer to any filing or disclosure duties under Title I of the Act." 39 Fed.Reg. 42,236 (1974). Examples were listed, including "vacation pay." *Id.* The proposed rules, issued less than six months later, included the following explanation of the basis for the regulation involved here:

> [P]aid vacations ... are not treated as employee benefit plans because they are associated with regular wages or salary, rather than benefits triggered by contingencies such as hospitalization. Moreover, the abuses which created the impetus for the reforms in Title I were not in this area, and there is no indication that Congress intended to subject these practices to Title I coverage.

40 Fed.Reg. 24,642–43 (1975).

In the preamble to the final regulation, the Secretary reaffirmed his general premise "that payment of normal compensation out of general assets while the employee performs no duties does not usually constitute a welfare plan." 40 Fed.Reg. 34,526 (1975). The Secretary has been consistent in his interpretation that vacation wages paid promptly and directly from the employer's general assets are not covered by ERISA. The advisory opinions of the Department of Labor cited by the plaintiffs are not inconsistent with this interpretation. *See, e.g.,* Advisory Opinion 81–55A (1981); Advisory Opinion 79–89A (1979).

We recognized the reasonableness of the Secretary's interpretation of the statute in *Scott,* 754 F.2d at 1502. The question presented in *Scott* was whether state law claims for failure to provide severance pay were preempted by ERISA. In *Scott,* severance payments were to be made out of general assets rather than from a special fund, and the employer argued that the payments therefore should be considered a "payroll practice" rather than an employee welfare benefit. In the course of rejecting the argument we noted, "[T]he [payroll] practices described in the regulations require disbursements of funds easily analogized to ordinary wages, and the payments involved invariably take place during the term of employment." *Id.* at 1503. We recognized the appropriateness of excluding such vacation payments from ERISA when paid from general assets, but distinguished severance payments in light of the statute's purpose:

> [A]n employer who ... terminates a large number of employees at once, may be faced with an extremely large severance liability. For these reasons, the danger that an employer may, because of lack of funds, default on an obligation to provide severance pay is greater than the danger of default on an obligation to provide medical leaves or vacations. This type of default is a central concern of ERISA. *See* 29 U.S.C. § 1001(a).... Therefore, it is reasonable for the Labor Department regulations to include severance pay, even when funded out of an employer's general assets, as an employee welfare benefit under ERISA, while excluding medical leaves, vacations, etc., as "payroll practices" when similarly funded.

*Id.*

Not only would inclusion of routine vacations-with-pay within ERISA contribute nothing to solution of the problems Congress sought to solve, it would also impose a substantial and needless burden upon employers and the federal courts. A 1983 survey reflects that paid vacations are provided to substantially all of 20,000,000 employees in medium and large establishments. News Release 84–194, U.S. Dept. of Labor, Bureau of Labor Statistics, May 1, 1984. ERISA coverage would require compliance by each employer with numerous statutory requirements for formulating plans, establishing procedures, giving notices, and filing reports. *See* 29 U.S.C. §§ 1022, 1022(b), 1024(a)(1), 1024(a)(2)(A),

1024(b), 1026(a), 1133(1), (2). Any employee claiming denial of vacation leave could sue his employer in federal court. *See* 29 U.S.C. § 1132(a). It is unlikely Congress intended to create burdens of this magnitude without evidence of need, and without comment.

■ Exclusion of ordinary vacations-with-pay from the Act does not deprive the term "vacation benefits" of any meaning. By the express terms of the regulation, funding of vacations other than out of an employer's general assets is not a "payroll practice" and therefore remains subject to the statute as a "vacation benefit." Such a plan was involved in *Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 679 F.2d 1307, 1308–09 (9th Cir.1982), *rev'd on other grounds*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

### IV.

29 U.S.C. § 1002(1)(B) includes by cross-reference "any benefit described in section 186(c) of this title," which in turn specifically refers to "pooled vacation ... benefits" drawn from a trust fund. 29 U.S.C. § 186(c)(6) (1982). Plaintiffs argue that because of this specific reference to *funded* vacation plans in section 1002(1)(B) by incorporation of section 186(c), the term "vacation benefits" in section 1002(1)(A) must refer to *unfunded* vacation programs. It is not clear that the term "pooled vacation benefits" as used in section 186(c) includes all funded vacation benefits, but even if it did the duplication would not appear to be significant. Many of the benefits incorporated in section 1002(1) by the cross-reference to section 186(c) are already found in section 1002(1). Thus it is evident that Congress was not concerned with duplication, but only with assuring that all benefits covered by section 186(c) were also covered by section 1002(1). As the Department's regulations recognize, in view of the extensive overlap the entire effect of the cross-reference is simply to include within the definition of "welfare plan" the two kinds of benefits (holiday and severance benefits) not already found in section 1002(1). 29 C.F.R. 2510.3–1(a)(3); *Scott*, 754 F.2d at 1502.

■ Plaintiffs stress material in the legislative history reflecting the importance Congress placed upon protecting employees from the burden of conflicting state regulation of pension and welfare plans. This was indeed one of the purposes of the Act, and Congress adopted a broad preemption provision to achieve it. *Shaw*, 463 U.S. at 105 n. 25, 103 S.Ct. at 2904 n. 25; *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 522–23, 101 S.Ct. 1895, 1905–06, 68 L.Ed.2d 402 (1981); *Scott*, 754 F.2d at 1501. 29 U.S.C. § 1144(a) provides that ERISA "shall supersede any and all State laws *insofar as they may now or hereafter relate to any employee benefit plan in section 1003(a) of this title.*" (Emphasis added). As this language makes clear, federal exclusivity is a corollary of regulatory coverage, not an independent statutory goal, and the Secretary has reasonably concluded that Congress did not intend to regulate unfunded vacations-with-pay. The statements in the legislative history upon which plaintiffs rely, like the language of section 1144(a), reflect a purpose to completely preempt state laws relating to matters covered by ERISA to avoid inconsistency in regulation; but they do not throw light on what matters Congress intended to cover by ERISA in the first place.

Other federal laws regulating employee compensation do not seek to impose national uniformity through a broad preemption provision, but instead permit the states to provide more stringent protections if they wish. *See* the Fair Labor Standards Act, 29 U.S.C. § 218 (1982); the Age Discrimination in Employment Act, 29 U.S.C. § 633 (1982); Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000h–4 (1982). For this reason, the distinction between "wage" compensation (not regulated by ERISA) and "benefit" compensation (regulated by ERISA) must be sensitively drawn to avoid invalidating state regulatory schemes Congress intended to encourage. Since the Department of Labor is charged with the

**862**

administration of all of these statutes except Title VII, and has had long experience with the varying problems and congressional policies involved with respect to each of the possible elements of the employee compensation package, the Department is particularly well equipped to interpret the statutes it administers in a way that will best accommodate Congress's purposes.

Plaintiffs argue Congress meant the term employee "benefits" to include both funded and unfunded vacation programs because the term was used with this meaning in two earlier statutes: 26 U.S.C. § 162(a) (1982), as interpreted in 26 C.F.R. 1.162–10(a) (1985), and 26 U.S.C. §§ 501(c)(9) (1982), as interpreted in 26 C.F.R. § 1.501(c)(9)–1 (1985). The first allows an employer to deduct as a business expense the cost of plans providing employee vacations; the second accords favorable tax treatment to employer contributions to Voluntary Employee Benefit Associations providing benefits to safeguard or improve employee health. The latter are funded plans and therefore consistent with the Secretary's regulation. More important, neither statute has at its purpose regulating payments made to employees in order to remedy specific abuses the presence of which may depend upon whether the payments are funded or unfunded.

Finally, plaintiffs cite two ERISA provisions indicating Congress expected unfunded welfare benefit plans to be covered by ERISA, 29 U.S.C. §§ 1081, 1112(a)(1), and three provisions that expressly mention the funded/unfunded distinction with regard to certain welfare benefit plans, 29 U.S.C. §§ 1002(36), 1003(b)(5), 1051, and conclude that unfunded vacation payment plans are covered by ERISA. The Secretary's interpretation is not based on the funded/unfunded distinction alone, however, but also on the wage/benefit compensation distinction, and none of the cited sections evidence a congressional intent that wage compensation (including vacation pay) be covered by ERISA when paid from the employer's general assets.

REVERSED and REMANDED.