**BECHTEL CONSTRUCTION, INC.,**
Plaintiff-Appellee,

v.

**UNITED BROTHERHOOD OF CARPENTERS & JOINERS OF AMERICA and San Diego District Council of Carpenters Local 1278, Unincorporated Association, et al., Defendant,**

and

**United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry and Local 230, Unincorporated Association, Defendant-Appellant.**

**BECHTEL CONSTRUCTION, INC., a Nevada Corporation,**
Plaintiff-Appellee,

v.

**UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA and San Diego District Council of Carpenters Local 2078, unincorporated associations, Defendant,**

and

**The San Diego Pipe Trades Joint Apprenticeship and Training Committee, an unincorporated association, Defendant-Appellant.**

Nos. 86–6064, 86–6070.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1987.

Decided March 17, 1987.

As Amended April 14, 1987.

Christopher J. Rillo, San Francisco, Cal., for plaintiff-appellee.

Jeffrey P. Fuchsman, San Diego, Cal., for defendants-appellants.

Before SNEED, FARRIS and NOONAN, Circuit Judges.

FARRIS, Circuit Judge:

We consider whether a bargained-for wage reduction, approved by all parties to a collective bargaining agreement, must yield to the law of California, which authorizes a state Division of Apprenticeship Standards to establish a schedule of wages to be paid to indentured apprentices, and provides that that wage schedule can only be changed, modified, or amended by the Division.

## BACKGROUND

Bechtel is a construction and engineering firm that has contracted to provide construction maintenance at the San Onofre Nuclear Generating Station. Bechtel entered into the General Presidents Project Maintenance Agreement by Contract, a national agreement between the General Presidents Committee and various contractors. The General Presidents Project Maintenance Agreement operates on a project by project basis. In 1981, Bechtel agreed with the General Presidents Committee to have the GPPM Agreement apply at San Onofre.

The GPPM Agreement makes no mention of wages and other terms of employment for apprentices. On the San Onofre project, apprentices in the plumbing and pipefitting trade are employed and trained by the contractor pursuant to an Agreement to Train Pipe Trades Apprentices. The Agreement to Train Apprentices was signed by Bechtel and the San Diego County Pipe Trades Joint Apprenticeship Committee, which is composed of labor and management representatives, and charged with the administration of the San Diego County Pipe Trades Apprenticeship Program. The Apprenticeship Agreement was approved by the Division of Apprenticeship Standards and incorporates all Approved Apprenticeship Standards of the Division, including wage rates.

In July, 1984, Bechtel announced that it would seek an across-the-board 15% decrease in wages at San Onofre, and petitioned the General Presidents Committee for approval. Bechtel received approval from the General Presidents Committee and put the wage reduction into effect in January, 1985, without seeking to modify the Apprenticeship Agreement.

Following the institution of the wage cut, fifteen plumbing and pipefitting apprentices filed complaints with the California Division of Labor Standards Enforcement to recover due and unpaid wages from

Bechtel. A hearing was scheduled for February, 1986. Bechtel notified the Division of its view that any dispute over the payment of wages to apprentices is preempted by federal law, and that California law prohibited the Division from hearing the apprentices' complaints. The Division removed the February hearing from its calendar pending a complete investigation of the jurisdictional issue.

Soon thereafter, Bechtel filed an action in the district court seeking declaratory and injunctive relief.

The district court found that under California law, state minimum wage standards for apprentices do not apply where there is a collective bargaining agreement, and that interpretation of a collective bargaining agreement is a matter of federal law which cannot be adjudicated by a state agency.

Only the Joint Apprenticeship Committee and the Plumbers and Pipefitters Local 230 appeal the district court's decision.

## ISSUES

Underlying this dispute is the fact that a union representing all tradespersons at the jobsite is the bargaining agent for apprentices, but there are no provisions specifically relating to apprentices in the bargaining agreement. The wage rate schedule for apprentices has historically been fixed by a separate Apprenticeship Agreement. The wage rate schedule in the Apprenticeship Agreement has been set by the California Division of Apprenticeship Standards under California law.

The Plumbers and Pipefitters Union argues that the bargained-for wage reduction cannot alter the terms of the separate Apprenticeship Agreement. The schedule, the Union argues, represents California's legal minimum wage requirements for apprentices. The Union relies on *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1986), in which the Supreme Court held that state attempts to establish minimum labor requirements are not preempted by federal labor law if those minimum require-ments are not inimical to the purposes of the National Labor Relations Act.

We hold first that California law cannot reasonably be interpreted to place its apprenticeship wage standards above the collective bargaining process. We then conclude that those standards are not minimum labor requirements such as are protected in *Metropolitan Life*, and that any attempt to enforce them against a collectively-bargained lower wage rate is preempted by federal law.

## DISCUSSION

I. Are California's Apprentice Wage Standards Legal Minimums Which Cannot be Undercut in Collective Bargaining?

The first question is whether the California standards for apprentices' wages are intended to be state minimum wage requirements. If the state standards are not legal minimum requirements, apprentices at the jobsite have no state right to wages at or above those standards, and no state agency can hear their claims. If they are minimum requirements, *Metropolitan Life* may require that federal labor law defer to them in conflicts such as this.

California regulations and statutes suggest that the state's wage schedules should give way to wage rates established in collective bargaining.

Section 212(c)(7)(A) & (B) of the California Apprenticeship Council regulations provides that any

> wage progression schedule shall be in accordance with the collective bargaining agreement, if contained therein; ... where the program is not subject to collective bargaining, the wage progression schedule shall be determined by the program sponsor in consultation with the Division of Apprenticeship Standards....

The regulatory scheme thus assumes that the wage scales of the state agency are secondary to the collective bargaining process, and only come into play where there is no collective bargaining agreement. The Union contends that the collective bargaining agreement here makes no provisions regarding apprentices, and there-

fore cannot preempt the agency's minimum standards. This view does not account for the fact that the General Presidents Committee is empowered to bargain for apprentices, and the GPPM Agreement is intended to cover apprentices. The 15% wage reduction was negotiated for apprentices as well as other tradespeople at San Onofre.

In addition, California Labor Code Section 229 provides that actions for the collection of due and unpaid wages cannot be maintained in cases "involving any dispute concerning the interpretation or application of any collective bargaining agreement containing ... an arbitration agreement." This provision has been interpreted in the California courts as a prohibition against the Labor Commissioner's assumption of jurisdiction over claims for unpaid wages arising under collective bargaining agreements. *See Plumbing, Heating & Piping Employers Council of Northern California v. Howard,* 53 Cal.App.3d 828, 126 Cal.Rptr. 406, 411 (1975). The provision demonstrates that the California legislature also considered that the bargaining process was fundamental, taking precedence over any standards that might otherwise govern labor relations.

The Union argues that the collective bargaining agreement at issue is not the kind contemplated by the California statute, as it does not contain an arbitration clause expressly covering the dispute in this case. However, the Agreement does include a general mandatory arbitration clause, which presumably applies to disputes over the terms of employment of apprentices.

The Union acknowledges that there may be "ambiguity" in California's law on apprenticeship, but it contends that the Division of Apprenticeship Standards has adopted the interpretation that the Committee puts forth. The Union argues that the state agency's view of the statutory and regulatory provisions it is to administer should prevail. The agency's interpretation, the Union suggests, "must be accorded great respect by the courts and be followed unless such an interpretation is clearly erroneous." It cites *Trafficante v. Metropolitan Life*

*Insurance Co.,* 409 U.S. 205, 210, 93 S.Ct. 364, 367, 34 L.Ed.2d 415 (1972), and *California Hospital Ass'n v. Henning,* 770 F.2d 856, 859 (9th Cir.1985).

Neither of these cases suggests a clearly erroneous standard. *Trafficante* holds only that a consistent administrative construction of an act is entitled to great weight. 409 U.S. at 210, 93 S.Ct. at 367. *Henning* states that "[w]here ... an agency has interpreted legislation it administers with respect to an issue as to which the legislation is silent or ambiguous, 'the question for the court is whether the agency's answer is based on a permissible construction of the statute.'" 770 F.2d 859 (quoting *Chevron, U.S.A., Inc. v. NRDC,* 467 U.S. 837, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984)).

A more commonly stated rule is that an agency's interpretation of the statute it administers is accorded great weight by the court, but "the courts must remain the final authorities on critical questions of statutory construction." *Fagner v. Heckler,* 779 F.2d 541, 543 (9th Cir.1985).

As evidence of the Division of Labor Standards Enforcement's interpretation of California law on the legal force of apprenticeship standards, the Joint Apprenticeship Committee points to the Division's initial acceptance of jurisdiction over the complaints of San Onofre plumbing and pipefitting apprentices, and the Division's Information Bulletin 84–12. The Union's argument is undermined by the fact that the Division later removed a scheduled hearing on the wage dispute from its calendar after hearing the arguments of Bechtel that the Division lacked jurisdiction. Therefore, it must rely mainly on Information Bulletin 84–12 as evidence of the Division's interpretation of California apprenticeship law.

Information Bulletin 84–12 states that even if a lower rate is negotiated in collective bargaining, apprentices must be paid the wages specified in the Approved Standards until a wage revision is submitted and approved by the Division of Appren-

ticeship Standards. There is no suggestion in the Bulletin as to the identity of its author, the law on which its conclusion is based, or to whom it is directed. There is no evidence in the record regarding the function of such "information bulletins" generally. The Bulletin is entitled to little weight as evidence of the agency's interpretation of California law.

Moreover, the Bulletin does not present a coherent interpretation of the law. It does not establish that the standards are a legal limit below which collectively bargained apprenticeship wages cannot fall. The scheme contemplated would allow undercutting of these standards as long as the lower wages are approved by the Division. Because it would require Division approval, it would theoretically put some constraints on the bargaining process, and give the Division some authority over apprentice wage disputes. The question then is how much authority the Division could exercise following negotiation of the lower wage by the bargaining agent. Because the scheme envisioned in the Bulletin does not make the Division's wage schedules a legally required minimum, the Division has no basis in law for refusing to grant a reduction below those standards, or otherwise interfering with collective bargaining. The Division's role in this process, therefore, would be meaningless. In fact, the Bulletin does not specify whether it is Bechtel, the collective bargaining agent, or the Union which must "submit" a wage reduction to the Division of Apprenticeship Standards.

In any event, we will not defer to the interpretation given in the Bulletin if it is contrary to the enabling statutes and regulations. Presumably, it represents an interpretation of California Labor Code § 3071, which authorizes the Apprenticeship Council (through the Division of Apprenticeship Standards) to create minimum wage schedules for apprentices. We find that the Bulletin is not a "permissible construction of the statute." The Bulletin interpretation conflicts with Labor Code § 229 and the Apprenticeship Council's Regulations, which establish the primacy of the collective bargaining agreement.

The supreme value of negotiation between management and labor, each represented by a single bargaining agent, is recognized in California law. *See Plumbing, Heating & Piping Employers Council of Northern California v. Howard*, 53 Cal.App.3d 828, 126 Cal.Rptr. 406, 410 (1975). The interpretation of § 3071 suggested by the Union would subordinate the bargaining process for all tradespeople (not just apprentices) to the goal of establishing uniform apprenticeship wages at all job sites. Even if this is a permissible subjugation of the collective bargaining principle, it is unlikely that such was even the intent of the author of Information Bulletin 84–12, since the Bulletin would allow undercutting of the uniform wage schedule simply upon application to the Division of Apprenticeship Standards.

Finally, the interpretation of California law suggested by Information Bulletin 84–12 is not a reasonable one.

It would be impractical to consider wage schedules for apprentices separately from wage schedules for other levels in the plumbing and pipefitting trade. The apprentice/journeyman system assumes a graduated scale of wages by which various levels are distinguished by differences in wage rates. Any reduction necessarily must affect all levels more or less equally to preserve wage distinctions. Naturally the bargaining agent for the higher levels in the trade must have power to negotiate for and bind apprentices as well. The system outlined by the district court recognizes this need. The system envisioned by the Union, in which the Approved Standards for apprentices could not be lowered except by application to the Division of Apprenticeship Standards, would in effect give apprentices more than one representative, in violation of fundamental principles of federal labor law. *See* NLRA Section 9(a), 29 U.S.C. § 159(a) (1982).

Insistence on maintaining separate standards for apprentices would either (a) make

apprentices more costly than journeymen in cases of "across-the-board" wage reduction, eliminating any incentive for employers to undertake the training of apprentices, to the detriment of apprentices themselves, or (b) distort the bargaining process by forcing the trade representative to push for higher wages for all tradesmen other than apprentices in order to maintain the wage distinctions between levels.

■ Legislative enactments should never be construed as establishing statutory schemes that are illogical, unjust, or capricious. *Lee Fook Chuey v. INS*, 439 F.2d 244, 249 (9th Cir.1970).

II. Does Federal Labor Law Preclude A State Agency's Consideration of An Action to Enforce California's Approved Standards for Apprentices?

■ Because we conclude that California law places the collective bargaining agreement over the Approved Standards for Apprentices in setting wages for apprentices on any jobsite, we consider only briefly whether federal labor law forbids what is forbidden by California law: the enforcement of Approved Standard wages against a lower wage negotiated in collective bargaining. Section 7 of the National Labor Relations Act, 29 U.S.C. § 157 (1982), protects concerted activity, particularly collective bargaining. Very recently, in *Wisconsin Dept. of Industry v. Gould, Inc.*, 475 U.S. 282, 106 S.Ct. 1057, 89 L.Ed.2d 223 (1986), the Supreme Court reaffirmed "the general rule set forth in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed. 775 (1959), that States may not regulate activity that the NRLA protects, prohibits, or arguably protects or prohibits." 106 S.Ct. at 1061. Bechtel argues that in accepting jurisdiction over this dispute, the Division of Labor Standards Enforcement was attempting to set aside wage rates negotiated by the apprentices' majority bargaining representative. The negotiation of wage rates, Bechtel argues, is protected activity under section 7. We agree. Section 7 guarantees the freedom of workers to join together and designate representatives to negoti-

ate the terms and conditions of employment. *See Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.*, 690 F.2d 489, 512 (5th Cir.1982); *Crenlo, Division of GF Business Equipment, Inc. v. NLRB*, 529 F.2d 201, 204 (8th Cir.1976).

We conclude that section 7 would preempt any attempt to enforce the Approved Standards against collectively bargained-for wage rates.

The Union finds an exception to federal labor law preemption in *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). In that case, the Supreme Court held that "when a state law establishes a minimal employment standard not inconsistent with the general legislative goals of the NLRA, it conflicts with none of the purposes of the Act." 471 U.S. at 757, 105 S.Ct. at 2398.

The Court concluded that because the state legislation did not limit the rights of self-organization or collective bargaining protected by the NLRA, it was not preempted by that act. *Id.* at 758, 105 S.Ct. at 2399. "Minimum state labor standards affect union and nonunion employees equally, and neither encourage nor discourage the collective-bargaining processes that are the subject of the NLRA." *Id.* at 755, 105 S.Ct. at 2397. The state's regulation in *Metropolitan Life* did not alter the balance of power between the parties to the contract. *Id.* at 751, 105 S.Ct. at 2395.

The Union maintains that the California Approved Standards "are nothing more than minimum benefit provisions protecting employees in general independent of the collective bargaining process."

*Metropolitan Life* seems at first glance to contradict our conclusion that the state's minimum standards, and actions to enforce them, would be preempted by federal law because they would change the terms negotiated in collective bargaining. The Court seems to say that the parties must simply bargain with those minimum standards as a floor. A representative cannot bargain standards away by negotiating for a lower rate. The Approved Standards at issue ·

here, however, are not like the state minimum labor standards protected in *Metropolitan Life*.

Despite the Union's assertion, the Standards cannot be minimum legal requirements if lower wage rates can be negotiated with the approval of the Division of Apprenticeship Standards. A "minimum" by definition cannot be undercut. *Metropolitan Life* concerned state legislation establishing true minimum labor standards as an exercise of the state's police power. 105 S.Ct. at 2399. In *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), cited in *Metropolitan Life*, the Court held that federal law does not give the parties to a collective bargaining agreement "the ability to contract for what is illegal under state law." 105 S.Ct. 1912. But wages below state "Approved Standards" are not illegal under state law if they can be legally instituted with the "approval" of a state agency.

The effect of the policy outlined in Information Bulletin 84–12, authorizing a bargaining representative to negotiate wage levels for apprentices lower than the Standards only if the Division of Apprenticeship Standards is involved, is to mandate state interference in the collective bargaining process. This distinguishes the California Standards from the minimums in *Metropolitan Life*, which the Court found to have virtually no effect on the bargaining process. 471 U.S. at 755, 105 S.Ct. at 2397.

Furthermore, the Court in *Metropolitan Life* failed to consider that such standards can sometimes have a serious effect on the collective bargaining process. Here, a set wage for apprentices would have required higher pay for all levels in the trade, in order to maintain the graded wage scale. If the interest of the higher-level tradespeople lies in accepting lower wages, as the representative obviously believed, the representative would have been hampered in its representation of them. Alternatively, the high minimum for apprentices might have forced apprentices out of the bargaining process entirely. The right to bargain collectively of one group or another is harmed by the minimum wage for apprentices. Unlike the minimum benefit standards in *Metropolitan*, the California requirements do not affect all workers equally, but concern only apprentices. This accounts for the distorting effect that enforcement of the Approved Standards could have on the bargaining process.

### CONCLUSION

The General Presidents Committee or Bechtel might have applied to the Division of Apprenticeship Standards for a change in the apprentice wage schedule at San Onofre once the across-the-board wage reduction was negotiated. That would have been a simpler resolution of this issue. We cannot hold, however, that these parties to a collective bargaining agreement were required by California law to submit their proposed wage reduction to the state agency for approval.

The district court properly enjoined the apprentices, the union, or any state agency from prosecuting or hearing any claim for wages due and unpaid against Bechtel based on state apprenticeship wage standards. The court's declaratory judgment that the wages of apprentices are determined by the terms of the GPPM Agreement was also proper.

AFFIRMED.