Karl CZECHOWSKI and Cathleen Cze-
chowski, on their own behalf and on
behalf of all persons similarly situated,
Plaintiffs,

v.

TANDY CORPORATION, Defendant.

No. C–88–2868–WWS.

United States District Court,
N.D. California.

Feb. 14, 1990.

Arnold R. Levinson, Griffinger, Levinson, Freed & Heinemann, James C. Sturdevant, Sturdevant & Sturdevant, San Francisco, Cal., for plaintiffs.

William R. Hartman, Jr., Musick, Peeler & Garrett, Los Angeles, Cal., for defendant.

### ORDER

SCHWARZER, District Judge.

Karl and Cathleen Czechowski bring this action to recover accrued vacation benefits on behalf of themselves and a class consisting of former employees of Radio Shack in California terminated since July 1, 1982. The complaint was filed in California Superior Court and removed by defendant Tandy Corporation, parent of Radio Shack, on the bases of federal question jurisdiction, 28 U.S.C. § 1331, and diversity jurisdiction, 28 U.S.C. § 1332. Before the Court are several motions, but only plaintiffs' motion to remand needs to be addressed.

Defendant suggests that the motion to remand is untimely, as it comes after substantial activity has taken place in this Court. A remand motion, however, may be made "at any time before final judgment [whenever] it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). Moreover, counsel have an obligation to bring to the court's attention any possible defect in subject matter jurisdiction whenever discovered in order to avoid further proceedings in the federal courts that may prove futile.

■ Plaintiffs' complaint alleges that Tandy denied them vested vacation benefits to which they were entitled under California Labor Code section 227.3, which requires that "all vested vacation shall be paid to [an employee] as wages at his final rate" upon termination of employment. Vacation time vests proportionately as labor is rendered and upon termination of employment an employee is entitled to a pro rata share of vested vacation pay. *Suastez v. Plastic Dress–Up Co.*, 31 Cal.3d 774, 183 Cal.Rptr. 846, 647 P.2d 122 (1982). Plaintiffs contend that defendant sought to avoid these state law obligations by creating the Tandy Corporation Voluntary Employees' Beneficiary Trust (the "VEBA trust") and holding it out as being subject to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*, and hence exempt from state regulation.

■ Defendant removed on two alternative grounds for federal jurisdiction: (1) ERISA preemption, and (2) diversity of citizenship. On this motion to remand, the burden of establishing federal subject mat-

ter jurisdiction is on the party asserting it, i.e. defendant. *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1194–95 (9th Cir.1988). Moreover, removal statutes must be construed strictly against removal. *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir.1979).

## I. *ERISA Preemption*

■ Defendant contends that the VEBA trust is an ERISA "employee welfare benefit plan" under the definition in 29 U.S.C. § 1002(1), which includes any plan maintained for the purpose of providing "vacation benefits" for its participants. If it is such a plan, ERISA would preempt any state law relating to the VEBA trust, 29 U.S.C. § 1144(a), and the action was removable on the basis of federal question jurisdiction. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

Defendant's VEBA trust provides vacation benefits to California Radio Shack employees in accordance with a Vacation Benefits Plan. These vacation benefits are administered on a "use it or lose it" basis, i.e., the vacation benefits to which an employee is entitled after a given length of employment must be used by the employee during the calendar year in which they accrue, or else they are forfeited at the end of that year. Any unused benefits are forfeited upon an employee's termination for any reason. (*See* Oct. 10, 1989 Levinson Decl. ex. 4.)

The VEBA trust has since its inception operated on an "advance and recapture" basis: Tandy disburses payments of vacation benefits directly to Radio Shack employees from its own general funds; the VEBA trust then reimburses Tandy on a quarterly basis for the moneys Tandy has disbursed to employees, and Tandy simultaneously gives a check to the VEBA trust for the same amount it has received from the VEBA trust. (*See id.* exs. 5–10.) Though the VEBA trust, since its inception, has disbursed over $1 million in vacation pay in this manner, it has never held more than $1,000. (*See id.* exs. 11, 12; Oct. 23, 1989 Hobbs Decl. ¶ 5.)

In *Massachusetts v. Morash*, —— U.S. ——, 109 S.Ct. 1668, 1672, 104 L.Ed.2d 98 (1989), the Supreme Court held that a "policy ... to pay employees for unused vacation time [does not] constitut[e] an employee welfare benefit plan." It reasoned that

In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds. *California Hospital Ass'n [v. Henning], supra* [770 F.2d 856], at 859 [ (9th Cir. 1985) ]. To that end, it established extensive reporting, disclosure, and fiduciary requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator. Because ordinary vacation payments are typically fixed, due at known times, and do not depend on contingencies outside the employee's control, they present none of the risks that ERISA is intended to address. If there is a danger of defeated expectations, it is no different from the danger of defeated expectations of wages for services performed—a danger Congress chose not to regulate in ERISA.

*Id.* 109 S.Ct. at 1673.

That reasoning is squarely applicable to the VEBA trust. That trust does not implicate any concerns over mismanagement since no funds are accumulated in it. Further, the risk an employee bears is precisely the same as his employment risk: that he may be terminated and cease to receive wages and other compensation. The VEBA trust, therefore, is not a plan covered by ERISA.

Defendant contends that the Ninth Circuit's decision in *California Hospital Ass'n v. Henning*, 770 F.2d 856 (9th Cir. 1985), *cert. denied*, 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 564 (1986), mandates a contrary conclusion. (*See* Def.Opp.Memo. to Pl. S.J. Motion at 14–15.) The court in *Henning* held that since vacation programs providing for " '[p]ayment of compensation, out of the employer's general assets ... while an employee is on vacation' " were

not ERISA employee welfare benefit plans, California laws relating to these programs were not preempted by ERISA. *Id.* at 858. While the court suggested in dicta that vacation plans not funded out of an employer's general assets might constitute ERISA employee welfare benefit plans, *see id.* at 861, it did not discuss the methods of funding it contemplated. Accordingly, *Henning* is inapplicable to this action. Defendant also relies on *Franchise Tax Board v. Construction Laborers Vacation Trust,* 679 F.2d 1307 (9th Cir.1982), *rev'd on other grounds,* 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), in which the court held that a trust that accumulated funds from several employers to provide vacation benefits and maintained a separate account for each employee was governed by ERISA. This case is inapposite.

Defendant also relies on the fact that the Internal Revenue Service and the California Franchise Tax Board have declared the VEBA trust a tax-exempt organization, and on an IRS private letter ruling approved of the "advance and recapture" method of funding a similar trust. (*See* Def. S.J. Motion Memo. ex. 105; Oct. 23, 1989 Hill Decl. ex. 116.) However, as plaintiffs point out, determinations by the IRS and the California Franchise Tax Board as to the status of the VEBA trust or its funding method for tax purposes are irrelevant to the determination whether the VEBA trust is subject to ERISA. Two advisory opinions of the United States Department of Labor to which defendant cites are also unpersuasive, as the plans there held to be subject to ERISA contained funds contributed by employers and disbursed directly to employees by the plans. (*See* Oct. 23, 1989 Hill Decl. ex. 113.) Defendant also contends that a vacation plan funded in precisely the same manner as the VEBA trust was held subject to ERISA by a California District Court, in *Ranck v. Nu–Med Corp.,* CV–88–2978–RMT (Nov. 30, 1988) (*see* Oct. 23, 1989 Hill Decl. ex. 114.) But that case was decided before the *Morash* decision,

and that court's order does not discuss the method of funding of the plan in question.

## II. *Diversity of Citizenship—Amount in Controversy*

██ For the Court to exercise diversity jurisdiction over this action upon removal, defendant must demonstrate that each member of the class plaintiffs propose to represent has a monetary claim of at least $10,000. 28 U.S.C. §§ 1441(a), 1332; *see Zahn v. International Paper Co.,* 414 U.S. 291, 300, 94 S.Ct. 505, 511, 38 L.Ed.2d 511 (1973); *Goldberg v. CPC Intern., Inc.,* 678 F.2d 1365, 1366–67 (9th Cir.), *cert. denied,* 459 U.S. 945, 103 S.Ct. 259, 74 L.Ed.2d 202 (1982).[1] The Court will assume this action to be a class action in determining whether jurisdiction exists. *See Goldberg,* 678 F.2d at 1367; *City of Inglewood v. City of Los Angeles,* 451 F.2d 948, 951 (9th Cir.1972).

██ On the face of their complaint, plaintiffs seek damages for lost vacation benefits, punitive damages, penalties pursuant to section 203 of the California Labor Code, and attorneys' fees pursuant to section 218.5 of the California Labor Code. Plaintiffs have demonstrated that Cathleen Czechowski's claim for lost benefits and statutory penalties might total approximately $3,000, and that Karl Czechowski's claim might total approximately $4,000. (Pl. Remand Memo. 8–9.) Defendant does not contend that the Czechowskis' claims involve larger sums. Rather, defendant contends that the amount in controversy exceeds $10,000 despite the lesser individual claims of the class members, because the potential award of punitive damages and attorneys' fees when added to the other claims would exceed the jurisdictional amount.[2]

██ While punitive damages and attorneys' fees may be considered in determining the amount in controversy, *see Bell v. Preferred Life Assurance Society of Montgomery,* 320 U.S. 238, 240, 64 S.Ct. 5, 6, 88 L.Ed. 15 (1943); *Goldberg,* 678 F.2d at

1. Diversity of citizenship exists since defendant is a Delaware corporation and the named class representatives are citizens of California.

2. This action was filed before the increase in the jurisdictional amount mandated by the 1989 Judicial Improvements and Access to Justice Act.

1367, defendant's contention is unavailing. First, plaintiffs are not entitled to an award of punitive damages under any of the four claims they assert. Plaintiffs assert a claim for breach of contract, a claim for breach of the covenant of good faith and fair dealing implied in their employment contract, a statutory claim under California Labor Code sections 227.3, 218.5, and 203, and a statutory claim under California Business & Professions Code sections 17200 and 17203. Plaintiffs plainly are not entitled to punitive damages for breach of contract. Nor may they recover punitive damages for breach of the implied covenant of good faith and fair dealing, as the covenant is a contract term breach of which will sustain an award only of contract damages. *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 254 Cal.Rptr. 211, 765 P.2d 373 (1988). Plaintiffs' claim under sections 227.3 and 203 of the Labor Code will not support a punitive damages award; section 203 provides for the award of statutory penalties when an employer "willfully fails to pay" wages due upon termination. The Legislature's provision of such statutory penalties precludes an award of punitive damages. *Cf. Marshall v. Brown*, 141 Cal.App.3d 408, 418–19, 190 Cal.Rptr. 392, 399–400 (2d Dist.1983) (statutory penalties under Cal.Lab.Code § 1054 are penal, precluding simultaneous award of punitive damages); *Troensegaard v. Silvercrest Industries, Inc.*, 175 Cal.App.3d 218, 226–28, 220 Cal.Rptr. 712, 716–18 (1st Dist.1985) (statutory damages under Cal.Civ.Code § 1794 are penal, precluding simultaneous award of punitive damages). Finally, plaintiffs' claim under section 17200 of the Business and Professions Code will not support an award of punitive damages either. *See Newport Components v. NEC Home Electronics*, 671 F.Supp. 1525, 1550–51 (C.D. Cal.1987).

Second, defendant has not met its burden of showing that the potential award of attorneys' fees apportioned pro rata among the class members would suffice to push each class member's claim over the jurisdictional minimum. Indeed, defendant has not even met its burden with respect to the class representatives themselves. Assuming that the Czechowskis' claims for denied benefits and statutory penalties total $3,000 and $4,000, respectively, defendant has failed to indicate any reason that their pro rata share of an attorneys' fees award would amount to $7,000 and $6,000. It is much more likely that an award of "reasonable" attorneys' fees under section 218.5 of the Labor Code would be *less* than the award of benefits and penalties. As defendant has not met its burden of establishing that each class member's claim will satisfy the jurisdictional minimum, diversity jurisdiction is lacking.

### III. *Conclusion*

For the reasons stated, the action is remanded to the California Superior Court in and for the City and County of San Francisco.

IT IS SO ORDERED.