**ALASKA AIRLINES INCORPORATED, et al., Plaintiffs,**

v.

**OREGON BUREAU OF LABOR, et al., Defendants.**

Civ. No. 94–982–JO.

United States District Court, D. Oregon.

March 13, 1995.

**394**

Calvin L. Keith, Cynthia A. Canfield, Perkins Coie, Portland, OR, for plaintiffs.

Kendall M. Barnes, Jr., Asst. Atty. Gen., Dept. of Justice, Salem, OR, for defendants.

## OPINION AND ORDER

ROBERT E. JONES, District Judge:

This case involves an alleged clash between the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, and the Oregon Parental Leave Act, ORS §§ 659.360–370, with regard to the use of accrued sick leave benefits for parental leave. This action is before the Court on Plaintiffs' and Defendants' Cross–Motions for Summary Judgment.[1]

## UNDISPUTED FACTS

Plaintiff Alaska Airlines is a corporation in the business of air travel in six states. Alaska Airlines' employees receive employment benefits such as sick leave, vacation pay, medical benefits, and disability benefits, pursuant to the Alaska Airlines Employee Welfare Benefit Plan ("Welfare Plan"). Metcalf Decla. Ex. A. The labor agreements provide that customer service agents and mechanics[2] shall accrue 8 hours of sick leave each month. Metcalf Decla. Ex. C at 2. These accrued sick leave hours may be used when an employee is unable to work due to sickness or injury. *Id.* at 1. Supervisors authorize sick leave and report it on the employee's time card for the pay period in which the sick leave is taken. *Id.* at 2. Payment of sick leave for mechanics or customer service agents is based on the employee's regular straight time rate. Metcalf Decla. Ex. D at 6, Ex. E at 10. Therefore, sick leave is disbursed at an employee's usual rate of compensation in the pay check for the pay period when the sick leave is taken.

In order to administer the payments of benefits including sick leave, Alaska Airlines created a Trust which is managed by three trustees who are Alaska Airlines employees. The Trust Agreement states that the "Trustee shall have no duty * * * to determine that the Trust Fund is adequate to provide the benefits payable pursuant to the [Welfare] Plan." Johnson Decla. Ex. A at 7. However, the Trustee is required to make payments out of the trust fund "[a]t the direction of the Administrator" who is also an Alaska Airlines employee. *Id.* at 11.

On November 20, 1984, Alaska Airlines entered into a Repayment Agreement with the Trustees whereby Alaska Airlines was appointed as the agent of the Welfare Plan,

> for the limited purpose of paying the Plan Benefits directly to the Participants at the same time and in the same manner as [Alaska Airlines] pays its obligations as they become due.

Canfield Decla. Ex. B at 2. The Repayment Agreement also entitled the airline to reimbursement from the Trust for all benefits paid to the employees, provided that the airline submits the claim for repayment within 12 months. *Id.* As a result of this agreement, employees do not receive benefits directly from the Trust. Instead, Alaska Airlines pays all sick leave benefits directly to the employees from its general funds "in the same manner as [it] pays its obligations as they become due."[3] Nonetheless, Plaintiffs

---

1. "Plaintiffs" refer to Alaska Airlines and Timothy Metcalf, the administrator of its employee welfare benefit program. "Defendants" refer to the Bureau of Labor and Industries of Oregon and Mary Roberts, its commissioner.

2. The employees who requested to use sick leave benefits during parental leave included a customer service agent and a mechanic.

3. Afterwards, the airline seeks reimbursement from the Trust for the benefits paid to employees, provided that the Trust contains sufficient funds. If the Trust does not contain sufficient funds, the airline will deposit money and then withdraw the amount paid to the employees.

argue that paying employees sick leave benefits in the same check as their usual compensation does not constitute a "payroll practice" under DOL regulations because they act on behalf of the Trust. Pls.' Reply and Mem. Opp. Defs.' Summ. J. at 5. Alaska Airlines pays sick leave benefits from its general assets directly to its employees, and then seeks reimbursement from the Alaska Airlines Trust ("Trust") which is solely funded by the airline. Canfield Decla. Ex. B.

Two Alaska Airlines employees sought to utilize accrued sick leave benefits during parental leave. However, Alaska Airlines prohibited the employees from using more sick leave than was permitted by their collective bargaining agreement.

These employees filed complaints with the Bureau of Labor and Industries ("BOLI") because the Oregon Parental Leave Act ("Act") entitles employees to twelve weeks of parental leave and allows employees to use any accrued sick leave during parental leave.[4] O'Grady Decla. Exs. C & D. On August 3, 1994, pursuant to the Act, BOLI issued cease and desist orders requiring the airline to allow employees to use all accrued sick leave during parental leave. O'Grady Decla. Ex. C at 13, Ex. D at 16. Plaintiffs responded to the orders by filing this action for declaratory and injunctive relief on August 12, 1994. Plaintiffs contend that the Employee Retirement Income Security Act of 1974 ("ERISA") completely governs the Welfare Plan, and thus preempts conflicting state law.

Plaintiffs assert two claims: (1) ERISA preempts the Oregon Parental Leave Act; and (2) Plaintiffs have no adequate remedy at law and will be irreparably harmed if they are forced to comply with BOLI's orders. Accordingly, Plaintiffs request two forms of relief from the Court: (1) a declaratory judgment stating that ERISA preempts the Act; and (2) an injunction preventing Defendants from enforcing the Act against Plaintiffs.

On December 9, 1994, Plaintiffs filed a Motion for Summary Judgment on both claims. Defendants oppose Plaintiffs' motion

and also filed their own Motion for Summary Judgment against Plaintiffs' Complaint on February 1, 1995.

### STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.,* 865 F.2d 1539, 1542 (9th Cir.1989), *cert. denied,* 493 U.S. 809, 110 S.Ct. 51, 107 L.Ed.2d 20 (1989).

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. *Id.* at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

### ARGUMENTS

The principal issue in this case is whether ERISA preempts the Oregon Parental Leave Act with regard to the manner in which Plaintiffs administer sick leave benefits. Both parties present opposing arguments which I will summarize and then address in turn.

### I. Plaintiffs' Position

#### A. Applicability of ERISA to Alaska Airlines Welfare Plan

Plaintiffs argue that the Welfare Plan is an "employee welfare benefit plan" as defined by ERISA: "any plan, fund, or program

---

4. ORS 659.360(1)(a) prohibits employers from refusing to grant an employee's request for parental leave of absence for the birth of their child for up to 12 weeks. Section 659.360(3) permits the employee "to utilize any accrued vacation leave, *sick leave* or other compensatory leave, paid or unpaid, during the parental leave." (Emphasis added).

which was * * * established or maintained by any employer * * * for the purpose of providing for its participants * * * benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits * * *." 29 U.S.C. § 1002(1)(A). Because the Welfare Plan provides sick leave, vacation pay, medical benefits, and disability benefits to employees, Plaintiffs conclude that the Welfare Plan is covered under ERISA. Pls.' Mem. Supp. Summ. J. at 6–8.

### B. Preemption of state law

Plaintiffs also conclude that the ERISA preemption clause, 29 U.S.C. § 1144(a), operates to preempt rival state laws. The clause states that "the provisions of [ERISA] supersede any and all State laws insofar as they may * * * *relate to* any employee benefit plan described in section 4(a) and not exempt under section 4(b)." 29 U.S.C. § 1144(a) (emphasis added). "State" is defined as "a State or any political subdivision thereof, or any agency or instrumentality of either which *purports to regulate,* directly or indirectly, the terms and condition of employee benefit plans." *Id.* § 1144(c)(2) (emphasis added).

Plaintiffs explain that these two sections are read together to require a two-part test for determining whether a state law is preempted: the state law is preempted if it (1) "relates to" an ERISA plan, and (2) "purports to regulate," either directly or indirectly, an ERISA plan. Pls.' Mem. Supp. Summ. J. at 11–12 (citing *Martori Bros. Distributors v. James–Massengale,* 781 F.2d 1349, 1356 (9th Cir.1986)).

Plaintiffs contend that the Act "relates to" the Welfare Plan because the Act expressly provides employee rights with regard to accrued sick leave even though the Welfare Plan governs sick leave benefits. Pls.' Mem. Supp. Summ. J. at 12. Likewise, the Act

"purports to regulate" the Welfare Plan because the Act directly regulates express terms in the Welfare Plan regarding accrued sick leave. *Id.* Because the Act "relates to" and "purports to regulate" the Welfare Plan which is governed by ERISA, the Act must yield to ERISA.

### II. Defendants' Position

#### A. Family and Medical Leave Act

Defendants contend that the Oregon Parental Leave Act merely guarantees parental leave rights which are secured under federal law in the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C.A. §§ 2601–2654 (Supp.1994). Therefore, even if ERISA preempts the Oregon Parental Leave Act, it does not preempt the FMLA which provides identical rights. Defs.' Mem. Supp. Summ. J. at 1–2. Moreover, the FMLA secures rights which are not subject to divestment by ERISA: " '[t]he rights established for employees under this Act or any amendment made by this Act shall not be diminished by any collective bargaining agreement or any employment benefit program.' " Defs.' Mem. Supp. Summ. J. at 3–4 (quoting 29 U.S.C. § 2652(b)).

#### B. ERISA employee welfare benefit plan

Alternatively, Defendant argues the ERISA preemption clause does not apply to this case because the Alaska Airlines program for paying sick leave is not an "employee welfare benefit plan" within the meaning of ERISA. *Id.* at 5–7. There is no "employee welfare benefit plan" as defined by labor regulations because Alaska Airlines pays sick leave benefits through ordinary payroll payments, rather than from a prefunded separate source.[5] *Id.* at 7–9.

---

**5.** Labor regulations exclude from the definition of "employee welfare benefit plan" any plan where there is "[p]ayment of an employee's normal compensation, out of the employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons * * *." 29 C.F.R. § 2510.3–1(b)(2) (1994).

Defendants' argument is based on bank statements which suggest that Alaska Airlines engaged in the following sequence of actions:

1) from 7/30/94–9/30/94, the airline issued sick leave payments to its employees in the amount of $1,419,213.60, though the trust contained only $847.06;

2) On 9/21/94, the airline deposited $7.5 million in the trust; and then

### III. Plaintiff's Reply and Opposition to Defendants' Motion

Plaintiffs concede that Alaska Airlines pays sick benefits directly to its employees, rather than from the Trust, and then receives reimbursement from the Trust. Pls.' Reply and Mem. Opp. Defs.' Mot. Summ. J. at 5. However, they contend that this method of payment does not remove the Welfare Plan from ERISA coverage because Alaska Airlines is an agent of the Trust, and therefore possesses the authority to pay benefits on behalf of the Trust. *Id.*

In addition, Plaintiffs strenuously argue that the FMLA does not provide identical rights as the Oregon Family Leave Act. According to regulations effective April 6, 1995, an employer is obligated to allow only "vacation, personal, and family leave" to be substituted for any unpaid leave relating to the birth of child. 29 C.F.R. § 825.207(b) (effective April 5, 1995). Moreover, the regulation only permitted the use of sick leave for "leave needed to care for a family member or the employee's own serious health condition," and only if the employer's uniform policy would normally allow such paid leave. *Id.* at § 825.207(c).

### DISCUSSION

This dispute may be summarized into three separate threshold inquiries which must be answered in turn:

(1) is the Alaska Airlines Welfare Plan an "employee welfare benefit plan" as defined by ERISA?;

(2) does the FMLA provide the identical rights as the Oregon Parental Leave Act?; and,

3) on 9/30/94, withdrew $1,419,213.60 from the trust to reimburse itself, apparently for sick leave payments provided from its own account. Barnes Aff. Exs. 6–8. This chain of events illustrates that Alaska Airlines paid sick leave benefits from its own assets rather than from a separate funded source, and then reimbursed itself from the fund. At oral argument, Plaintiffs stated that the airline always pays sick leave from its general funds, and then seeks reimbursement from the Trust.

(3) does the Oregon Parental Leave Act "relate to" and "purport to regulate" the Welfare Plan?

The answers to these questions will resolve the central issue of whether ERISA preempts the Oregon Parental Leave Act in this case.

### I. Employee Welfare Benefit Plan

ERISA applies to "employee welfare benefit plans" as defined in 29 U.S.C. § 1002(1)(A): "any plan, fund, or program which was * * * established or maintained by any employer * * * for the purpose of providing for its participants * * * benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits * * *." Not all employee benefit plans are covered under ERISA; the purposes of ERISA and the Department of Labor (DOL) regulations implementing the statute circumscribe the types of plans which are regulated by the statute.

■■■ Congress enacted ERISA to protect employees from the "mismanagement of funds accumulated to finance such benefits, and failure to pay employees the benefits as promised." [6] *California Hosp. Ass'n v. Henning,* 770 F.2d 856 (9th Cir.1985), *modified,* 783 F.2d 946, *cert. den.,* 477 U.S. 904, 106 S.Ct. 3273, 91 L.Ed.2d 564 (1986); *Massachusetts v. Morash,* 490 U.S. 107, 113, 109 S.Ct. 1668, 1672, 104 L.Ed.2d 98 (1990) (citation omitted). After acknowledging these purposes of ERISA, the Ninth Circuit in *Henning* held that the payment of vacation benefits from an employer's general assets was not an ERISA "employee benefit plan" because it compared to the payment of ordinary wages, and thus did not involve the evils Congress sought to remedy through ERISA. 770 F.2d at 859–861.

6. To achieve this end, ERISA "sets forth reporting and disclosure obligations for plans, imposes a fiduciary standard of care for plan administrators, and establishes schedules for vesting and accrual of pension benefits." *Massachusetts v. Morash,* 490 U.S. 107, 113, 109 S.Ct. 1668, 1672, 104 L.Ed.2d 98 (1990) (citation omitted). Furthermore, "[s]uits to enforce the terms of the statute and to recover welfare benefits wrongfully withheld arise under federal law and can be brought in federal court without regard for the amount in controversy." *Id.* (citation omitted).

Likewise, the Supreme Court in *Morash*, while citing *Henning* with approval, similarly held that the payment of vacation benefits out of a single employer's general assets did not constitute an ERISA "employee benefit plan." [7]  490 U.S. at 120–121, 109 S.Ct. at 1675–76.  The Supreme Court based its holding on (1) the purposes of ERISA and (2) the interpretative regulations promulgated by the Secretary of Labor.

First, like the court in *Henning*, the Supreme Court explained that the payment of vacation benefits from an employer's general assets rather than from a separate fund did not implicate Congress' concern regarding the mismanagement of funds accumulated to pay employee benefits because the vacation benefits were paid like ordinary wages.  *Id.* at 115, 109 S.Ct. at 1673.  Therefore, "[i]f there is a danger of defeated expectations, it is no different from the danger of defeated expectations of wages for services performed—a danger Congress chose not to regulate."  *Id.*  Second, the Court quoted a Notice of Proposed Rulemaking which listed types of regular compensation that are not covered by ERISA: "[e]xamples of the employer practices that may receive this treatment are payment of overtime pay, vacation pay, * * * jury duty or military duty, and *pay while absent on account of illness or excused absences.*"  *Id.* at 117, 109 S.Ct. at 1674 (quoting 39 *Fed.Reg.* 42236 (1974) (emphasis added).  Final regulations which excluded certain payments from an employer's general assets from the definition of "employee benefit plan" were subsequently adopted and labelled "payroll practices."  *Id.* at 117–18, 109 S.Ct. at 1674–75 (citing 29 C.F.R. § 2510.3–1(b)).[8]  The Court applied

these regulations to support its conclusion that vacation benefits derived "from the same fund from which [the employees] receive their paychecks," are not regulated by ERISA.  *Id.* at 118–121, 109 S.Ct. at 1674–76.

■  The reasoning set forth by the Ninth Circuit and Supreme Court regarding vacation benefits is squarely applicable to Alaska Airlines' payment of sick leave in this case.  Congress' concern regarding the mismanagement of funds is not implicated by Alaska Airlines' sick leave payment plan because the airline pays employees sick leave benefits (1) out of its general assets, (2) at the employee's usual rate of compensation, (3) in the same paycheck as regular earnings.  There is no separate fund for the benefits which requires administration to enable employees to receive the appropriate sick leave benefits.  Instead, the sick leave is paid from the same general fund as the employee's wages and the amount of assets in the trust is irrelevant.

Likewise, Congress' concern regarding the non-payment of benefits is also not applicable to this case.  The risk of a failure to pay benefits is identical to the risk of the non-payment of wages for work performed because the sick leave benefits derive from Alaska Airlines' general assets.[9]  As stated in *Morash*, this is not a risk Congress sought to regulate by ERISA.  490 U.S. at 115, 109 S.Ct. at 1673.

Furthermore, the plain, unambiguous language of 29 C.F.R. § 2510.3–1(b)(2) excludes Alaska Airlines' payment of sick leave from ERISA as a "payroll practice:" [10] the airline

---

**7.**  The Court expressly noted that "the creation of a *separate fund to pay employees vacation benefits* would subject a single employer to the regulatory provisions of ERISA."  *Id.* at 114, 109 S.Ct. at 1672.

**8.**  29 C.F.R. § 2510.3–1(b) states in part that the term "employee welfare benefit plan" shall not include "(2) Payment of an employee's normal compensation, out of an employer's general assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons * * * and (3) Payment of compensation out of an employer's general assets, on account of periods of time during which

the employee, although physically and mentally able to perform his or her duties and not absent for medical reasons * * * performs no duties; for example (i) Payment of compensation while an employee is on vacation or absent on a holiday * * * ."

**9.**  Employees receive payments directly from the airline and do not look to the Trust for disbursements.

**10.**  Section 2510.3–1(b)(2) provides that the definition of "employee welfare benefit plan" does not include: "[p]ayment of an employee's normal compensation, out of an employer's general

pays the sick leave benefits (1) at the regular rate of compensation, (2) in the same paycheck as regular earnings, (3) out of the airlines' general assets, (4) for periods when the employee is physically or mentally unable to perform his or her work, or absent for medical reasons. Consequently, the underlying policies of ERISA and the DOL regulations dictate my conclusion that the Alaska Airlines' payment of sick leave benefits is not an ERISA "employee welfare benefit plan."

This conclusion is also supported by the reasoning in *Shea v. Wells Fargo Armored Service Corp.,* 810 F.2d 372 (2d. Cir.1987). In that case, plaintiff (an employee union) argued that the employer's payment of sick leave and vacation benefits constituted an "employee welfare benefit plan" covered by ERISA. *Id.* at 375. However, the court disagreed and held that

> [t]he sick leave and vacation wages at issue here fall within the "payroll practices" provision because they are payable: (1) out of Wells Fargo's operating assets and not out of any separate account, fund, or trust; (2) at the employees' normal rate of compensation; (3) for periods of time allowed as absences from employment for vacations, holidays, and medical reasons; (4) in accordance with traditional practices; and (5) without additional conditions or contingencies of any kind.

*Id.* at 376.

In addition, my conclusion that Alaska Airlines' payment of sick leave is not covered by ERISA is further supported by the factually similar case of *Czechowski v. Tandy Corp.,* 731 F.Supp. 406 (N.D.Cal.1990). In *Czechowski,* employees sued their employer for vacation benefits under California law, which required the employer to pay accrued vacation benefits as wages at termination. *Id.* at 407. The employer argued that its Volun-

tary Employees' Beneficiary (VEBA)[11] trust provided vacation benefits and thus was an ERISA "employee welfare benefit plan." *Id.* at 407–408.[12]

The VEBA trust operated on an " 'advance and recapture' " basis: the employer disbursed payments of benefits directly to the employees from its general fund; the trust then reimbursed the employer for moneys disbursed to the employees, while the employer simultaneously funded the trust with the same amount that it received from the trust. *Id.* at 408. Though the VEBA trust reimbursed the employer for over $1 million in vacation pay, it never retained more than $1,000. *Id.*

The court held that Congress' concern regarding the mismanagement of funds and the failure to pay employee benefits from accumulated funds were inapplicable to the VEBA trust for two reasons. First, the trust never accumulated sufficient funds to pose a risk of mismanagement. Second, because the employees received the benefits directly from their employer, the risk of a failure to receive the benefits was the same risk that they would not receive compensation for work performed—" 'a danger Congress chose not to regulate.' " *Id.* at 408–409 (quoting *Massachusetts v. Morash,* 490 U.S. 107, 115, 109 S.Ct. 1668, 1673, 104 L.Ed.2d 98 (1990)).

Like the VEBA trust in *Czechowski,* the Trust in the present action does not disburse funds directly to employees, but rather reimburses the employer for benefits paid to the employees out of its general assets. Therefore, the risk of mismanagement rests upon the airline instead of the employees because they receive sick leave benefits directly from the airline without regard to the amount of money in the Trust. Furthermore, the airline disburses sick leave from its own funds. Consequently, the risk of not receiving sick

---

assets, on account of periods of time during which the employee is physically or mentally unable to perform his or her duties, or is otherwise absent for medical reasons * * *."

ERISA grants authority to the Secretary of Labor to promulgate "such regulations as he finds necessary or appropriate to carry out the provisions of [ERISA]." 29 U.S.C. § 1134. "The agency's interpretation of the statute, embodied in the regulation, carries persuasive

weight because it was formulated contemporaneously with the passage of ERISA." *California Hosp. Ass'n v. Henning,* 770 F.2d 856, 859.

**11.** Alaska Airlines' trust for its Welfare Plan is also a VEBA trust.

**12.** Accordingly, the employer demanded dismissal of plaintiffs' suit because ERISA preempted the California law. *Id.*

leave benefits is identical to the risk of non-payment of compensation for services rendered, one that Congress sought not to regulate through ERISA. *Morash* 490 U.S. at 115, 109 S.Ct. at 1673. Accordingly, I conclude that Alaska Airlines' payment of sick leave benefits, out of its general assets, does not constitute an ERISA "employee welfare benefit plan."

Because ERISA is inapplicable to Alaska Airlines' sick leave benefits, there is no ERISA preemption and I need not address the effect of the Oregon Parental Leave Act.[13] Therefore, Plaintiffs' Motion for Summary Judgment (# 16–1) is DENIED, Defendants' Motion for Summary Judgment (# 32–1) is GRANTED, and Plaintiffs' case is hereby DISMISSED.

### CONCLUSION

IT IS ORDERED that Plaintiffs' Motion for Summary Judgment (# 16–1) is DENIED. IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (# 32–1) is GRANTED. Accordingly, Plaintiffs' case is hereby DISMISSED.

Martha Paluch, Asst. U.S. Atty., Denver, CO, for U.S.

---

13. However, had the Welfare Plan been an ERISA "employee welfare benefit plan," it is indisputable that the Oregon Parental Leave Act would have been preempted by ERISA because

(1) the Act "relates to" an ERISA plan, (2) the Act "purports to regulate" an ERISA plan, and (3) the Act affords greater rights than the FMLA.