139 F.3d 1289
 21 Employee Benefits Cas. 2835, 98 Cal. Daily
Op. Serv. 2233,
98 Daily Journal D.A.R. 3098
DELTA DENTAL PLAN OF CALIFORNIA, INC., a California
corporation; Rockwell International Corporation,
a Delaware corporation, Plaintiffs-Appellees,
v.
Gary MENDOZA, Commissioner, Commissioner of Corporations of
the State of California, Defendant-Appellant.
 No. 96-15245.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 4, 1997.
Decided March 27, 1998.
 
 Carol Dorward, San Francisco, CA, for defendant-appellant.
 Matthew L. Larrabee, San Francisco, CA, for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California; Fern M. Smith, District Judge, Presiding. D.C. No. CV-95-03316-FMS.
 Before: FLETCHER and REINHARDT, Circuit Judges, and WARDLAW,* District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 The Commissioner of Corporations of the State of California ("the Commissioner") appeals a decision by the district court granting declaratory and injunctive relief to Delta Dental Plan of California, Inc. ("Delta") and Rockwell International Corporation ("Rockwell"). The district court held that the Commissioner's Cease and Desist Order is preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, et. seq., as it relates to Delta's ERISA-governed plans. Because we conclude that, pursuant to Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the district court should have abstained from hearing the merits of this action, we reverse and remand to the district court for dismissal.
 
 I.
 
 2
 The Knox-Keene Health Care Service Plan Act of 1975, Cal. Health & Safety Code §§ 1340-1399.5 ("Knox-Keene Act") regulates health care service plans in the State of California. It was enacted to insure that residents of California receive quality, low-cost health care from financially stable health care plans, and that they receive the information necessary to make informed decisions regarding their health plan needs. Cal. Health & Safety Code § 1342.
 
 
 3
 Many health care service plans under the Knox-Keene Act are established for the purpose of providing dental benefits to employees and their dependents and thus are regulated concurrently by ERISA. Delta, plaintiff/appellee in this case, is a non-profit corporation organized and licensed under the Knox-Keene Act to provide group dental health care plans in California. Approximately 9.3 million Californians are enrolled in a Delta dental plan. The terms of a benefit package vary depending on the needs of a particular employer, or "plan sponsor." Approximately 60% of all Delta plans are governed by ERISA.
 
 
 4
 The terms and conditions of a particular group dental health care plan are set forth in a "Plan Contract" between the plan sponsor and Delta. Delta's primary responsibilities under a plan contract include processing requests for benefits, calculating the amount of the benefit provided by the plan, and handling the payment of benefits to or on behalf of plan beneficiaries.
 
 
 5
 Plaintiff/appellee Rockwell is a Delaware corporation with its principal place of business in California. Rockwell contracted with Delta to provide its employees and other designated beneficiaries with dental benefits. Rockwell sponsors several Delta employee welfare benefit plans that provide dental benefits. All are governed by ERISA and all share the same basic structure. Rockwell's plan contracts with Delta stipulate that all questions regarding contractual interpretation or enforcement are to be governed by California state law, including the Knox-Keene Act.
 
 
 6
 The plan contracts between Rockwell and Delta provide that Delta will pay a specified percentage (varying between 40% and 100% depending upon the type of dental service provided and the status of the employee covered) of the patient's dental bill. Delta calculates the percentage it is obligated to pay using the lesser of two billing measures: (1) "usual, customary, and reasonable" fees ("UCR fees") or (2) "fees actually charged." By definition, the UCR fee is "usual" (the amount the dentist regularly charges and receives, or the lowest such fee, for a given service); "customary" (within a range of usual fees charged and received for a particular service by similarly-situated dentists); and "reasonable" (either usual or customary, or if greater than customary, otherwise justified). The second defined measure, the "fee actually charged," represents the fee for a particular dental service (the UCR fee) less any amount which is discounted, waived, or rebated, or which the dentist does not use good faith efforts to collect. The beneficiary is obligated to pay the remaining percentage of his or her dental bill. These remaining fees are known as "Patient Copayments."
 
 
 7
 Delta allows beneficiaries to obtain dental services from any dentist. When beneficiaries obtain services from a "Participating Dentist" (a dentist under contract with Delta), Delta pays its percentage of the fees directly to that dentist. In contrast, when beneficiaries obtain dental services from a non-participating dentist, the patient is required to pay the full amount of the bill to the dentist first, and Delta subsequently reimburses the patient for the percentage of the fee stipulated by the plan contract. Any California licensed dentist can become a participating dentist by signing a "Participating Dentist Agreement" with Delta, agreeing to abide by its terms, and submitting a list of his or her UCR fees. Approximately 17,000 California dentists are Delta participating dentists--comprising nearly 95% of all dentists in the state.
 
 
 8
 Delta's Participating Dentist Agreement contains two provisions pertaining to patient copayments. First, Rule 3 requires participating dentists to "charge and make reasonable efforts to collect from an eligible patient the entire amount payable by the patient under the terms of the applicable dental care contract." Second, Rule 13 attempts to enforce the above obligations by refusing payment to participating dentists who work in dental practices which fail to comply with Delta's rules. Rule 13 declares that no participating dentist may submit claims for dental services rendered if he or she works with:
 
 
 9
 (a) a participating dentist who is subject to mandatory prior authorization or whose list of usual fees has been modified by Delta because of failure to collect patient copayments; or (b) a participating dentist who does not comply with any portion of these rules; or (c) a non-participating dentist whose billing practices or policies would violate any portion of these rules if he or she were a participating dentist.
 
 
 10
 After treating a Delta beneficiary, a participating dentist signs and submits a claim to Delta, called an "Attending Dentist's Statement," which lists the "fee actually charged." The Attending Dentist's Statement contains the following provision: "I will charge and intend to collect the entire portion of the fees stated above which Delta determines to be the patient's responsibility, and I will not waive, reduce or rebate any of that portion unless I expressly so state on this form." According to Delta, when a participating dentist fails to make a good faith effort to collect patient copayments in accordance with Rule 3, patients effectively receive a discount, and the "fee actually charged" is inflated because, by definition, it is not supposed to reflect any discounts or waived copayments. Thus, if Delta calculates the percentage it is obligated to pay based on this inflated amount, it would be paying more than its anticipated responsibility. According to Delta, its copayment plan is designed to strike a balance between cost and efficient use of medical resources; reduced costs can result in people obtaining more medical treatment than necessary. Consequently, when a participating dentist fails to collect patient copayments, Delta takes adverse action, either reducing benefits owed to that dentist or terminating his or her contract with Delta.
 
 
 11
 Dr. Dennis Hardin is a participating dentist who operates a network of dental offices in Southern California known as either SmileCare Dental Group or Community Dental Services (hereinafter, "SmileCare"). SmileCare devised a "Supplemental Plan" for Delta beneficiaries known as "SmileCare Coverage Plus." Smile care and the defendant/appellant contend that this supplemental plan complements the primary insurance provided by Delta by permitting patients to pay an annual "premium" in lieu of any copayments. This plan has been licensed under the Knox-Keene Act since 1988 and represents one of two licensed "supplemental" insurance plans in California. Many Delta beneficiaries have since enrolled in SmileCare's supplemental plan, including employees of such plan sponsors as Rockwell, McDonnell Douglas, Kaiser Permanente, Lockheed, Northrop, General Motors, and Fedco.
 
 
 12
 SmileCare's billing scheme attracts patients by reducing the amount they are responsible to pay in any given year. By doing so, however, SmileCare effectively waives the copayments its patients are responsible for paying. Thus, SmileCare's supplemental plan violates both Delta's plan contract, which requires the "fee actually charged" to reflect any amount discounted, and Delta's contract with participating dentists, which requires dentists to collect copayments under Rules 3 and 13.
 
 
 13
 Delta took action against SmileCare shortly after the State licensed SmileCare's Supplemental Plan. In addition to assigning all SmileCare-affiliated dentists to a single, reduced fee schedule to reflect SmileCare's practice of waiving patient copayments, Delta also began requiring SmileCare dentists to obtain authorization before providing basic dental treatment, such as fillings and teeth cleanings. Delta did not impose this requirement on any other providers. Appellant argues this preauthorization requirement subjected patients to undue delays, leading them to seek dental care elsewhere. Moreover, Delta allegedly sent letters to some dentists informing them that no participating dentists were permitted to submit any Attending Dentist's Statements for services performed in a SmileCare facility and that any such claims received after a certain date would be grounds for terminating their participating dentist status. Delta further refused to accept requests for membership from dentists who performed services at any SmileCare facility.
 
 
 14
 Under the Knox-Keene Act, health care service plans like Delta operate under the watch of the Commissioner of Corporations of the State of California ("the Commissioner"). Defendant/appellant Gary S. Mendoza held this office until March of 1996. The Commissioner claims that the motive underlying Delta's actions is clear: "economic retaliation against SmileCare and a warning to all others that might offer or accept supplemental insurance." Thus, in response to Delta's actions, the Commissioner issued a Cease and Desist Order ("the Order") to Delta in 1995, requiring it to stop committing alleged violations of the Knox-Keene Act and to recognize state-licensed supplemental plans. The Order, which the Commissioner issued pursuant to his authority under section 1391 of the Knox-Keene Act, specifically alleged violations of § 1371.2 and § 1367(h) of that same statute.
 
 
 15
 The Order essentially prohibits Delta from using Rules 3 and 13 to justify taking adverse action against any participating dentist on the grounds that that dentist's acceptance of a state-licensed supplemental coverage plan constitutes a failure to collect, or waiver of, patient copayments. Moreover, the Order requires Delta to reinstate any participating dentist, at his or her UCR fees, who has been subject to a preauthorization requirement, or whose UCR fees have been modified, or whose status as a participating dentist has been terminated because such dentist either (1) accepted or provided supplemental coverage or (2) performed services at a dental facility which provided supplemental coverage which Delta deemed a waiver of copayments.
 
 
 16
 Pursuant to its rights under the Knox-Keene Act, on July 17, 1995, Delta requested a state administrative hearing to challenge the application of the Order.[1] Cal. Health & Safety Code § 1391(a). This hearing was originally scheduled for December 1995, but was continued until a later date.
 
 
 17
 On September 19, 1995, Rockwell and Delta filed the complaint in the instant case in the district court. They seek declaratory and injunctive relief. They claim that the Commissioner is precluded from enforcing the Order as to Delta's ERISA-governed plans because ERISA preempts enforcement.[2]
 
 
 18
 Delta moved for summary judgment. The Commissioner argued that the district court should decline jurisdiction pursuant to Younger abstention, Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). He argued in the alternative that the Order did not mandate the structure of an ERISA-governed plan, and thus did not "relate to" an ERISA-governed plan. He also argued that even if the Order related to ERISA-governed plans, it was saved by the ERISA savings clause. The Commissioner likewise moved for summary judgment.
 
 
 19
 On January 2, 1996, the district court announced that Younger abstention was not warranted, and found that enforcement of the Order was preempted by ERISA insofar as it required Delta to administer ERISA-governed plans in a manner inconsistent with the copayment scheme. The Commissioner timely appealed this decision, as well as the district court's refusal to abstain.
 
 
 20
 After the appeal was argued before this court, the administrative proceedings before the Department of Corporations were finalized. The administrative law judge narrowed the Commissioner's Cease and Desist Order,[3] holding that Delta had violated the Knox-Keene Act in two respects, and affirmed the Order as amended.[4]
 
 II.
 A.
 
 21
 We review de novo the district court's refusal to abstain under Younger. See Benavidez v. Eu, 34 F.3d 825, 831 (9th Cir.1994).
 
 
 22
 The Younger abstention doctrine reflects the strong federal policy against federal interference with pending state judicial proceedings. See Fresh Int'l Corp. v. Agricultural Labor Relations Bd., 805 F.2d 1353, 1356 (9th Cir.1986). Although the Younger case involved pending state criminal proceedings, the doctrine applies to pending state administrative proceedings as well. See id.; Bud Antle, Inc. v. Barbosa, 45 F.3d 1261, 1272 (9th Cir.1994) (noting that Younger applies to state administrative hearings so long as the proceedings are "judicial in nature"). When a case is one in which the Younger doctrine applies, the district court has no discretion; it must dismiss. Fresh Int'l, 805 F.2d at 1356.
 
 B.
 
 23
 The Supreme Court has announced a three-prong test to determine whether a federal district court should abstain from hearing a case where Younger abstention is invoked. Id. at 1357. Abstention is required when: "(i) the state proceedings are ongoing; (ii) the proceedings implicate important state interests; and (iii) the state proceedings provide an adequate opportunity to raise federal questions." Id. at 1357-58 (citing Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431, 102 S.Ct. 2515, 2520-21, 73 L.Ed.2d 116 (1982)). We find that all three prongs are satisfied and conclude that the district court erred in entertaining this action. Because we hold that the district court should have abstained from hearing this action, we do not reach the issue of whether ERISA preempts enforcement of the Commissioner's Order as to Delta's ERISA-governed plans.
 
 1.
 
 24
 The critical issue in regard to the first prong of the test is whether the "state proceedings were underway before the initiation of the federal proceedings," not whether the state proceedings were still "ongoing" at the time the federal suit was brought. See Kitchens v. Bowen, 825 F.2d 1337, 1341 (9th Cir.1987). In any event, both tests are satisfied in the instant case. Delta indicated to the Commissioner that it planned to seek an administrative remedy challenging the Order on July 17, 1995. In response, pursuant to California law, the Commissioner issued a notice of hearing that was received by Delta on August 22, 1995. Delta was told in that notice that a hearing had been scheduled. Approximately one month later, on September 19, 1995, Delta and Rockwell initiated this action in federal court. Thus, Delta initiated the state proceedings first, and they were underway and ongoing before the federal suit was brought.
 
 
 25
 The district court concluded that abstention was unwarranted because the outcome of the federal proceedings would not "enjoin" the pending state administrative proceedings since the state proceedings would still be necessary to resolve the validity of the Cease and Desist Order with respect to Delta's non-ERISA plans. In so concluding, the district court relied upon California Diversified Promotions, Inc. v. Musick, 505 F.2d 278 (9th Cir.1974).
 
 
 26
 There, we held that Younger abstention is inappropriate where the federal proceedings would have no impact on the pending state proceedings. In Musick, plaintiffs were seeking an injunction against bad-faith arrests in the future. 505 F.2d at 282. The court found specifically that such relief would have no impact on pending state court prosecutions. Id. Here, a decision to assert jurisdiction would significantly impact the ongoing state administrative proceedings. The district court enjoined the Cease and Desist Order as it relates to all ERISA-governed plans. Thus, as to over one-half of Delta's policies, the district court effectively removed the case from the state proceedings.[5]
 
 2.
 
 27
 The state administrative proceedings implicate important state interests. The intent of California's legislature in enacting the Knox-Keene Act--to insure low-cost, high quality health care for the citizens of California, and to insure that the citizens have adequate information to make informed choices--itself reflects important state interests. Cal. Health & Safety Code § 1342. Enforcement of the Act is likewise an important interest. See, e.g., Van de Kamp v. Gumbiner, 221 Cal.App.3d 1260, 270 Cal.Rptr. 907, 914-15 (1990) (explaining the importance of the Commissioner's role in enforcing Knox-Keene and promoting and protecting the public's interest); cf. Fresh Int'l, 805 F.2d at 1360 n. 8 (noting that the importance of a state's interests in a proceeding is "underscored by the fact that the [enforcement] proceedings were initiated by an agency of the state").
 
 
 28
 California granted the Commissioner the power to issue orders directing any firm, organization or individual to cease and desist from any practices that violate the Knox-Keene Act. Cal. Health & Safety Code § 1391(a). An organization subject to such an order may seek review and relief through a process specified in the Act itself. The organization may request a hearing, which is conducted pursuant to California's Administrative Procedure Act, Cal. Gov.Code § 11500 et. seq., and may seek judicial review in California state courts of any final order or decision following the administrative hearing. Cal. Health & Safety Code §§ 1391, 1397. This process allows the State of California to determine for itself how to enforce most effectively the Knox-Keene Act and to promote the interests of the State consistent with other state and federal laws.
 
 3.
 
 29
 Delta had an adequate opportunity to, and did in fact, raise its federal ERISA defense in the state administrative proceedings. By doing so, Delta preserved this issue for review in the California state courts.
 
 
 30
 As noted, administrative proceedings brought pursuant to the Knox-Keene Act are governed by the California Administrative Procedure Act (CAPA). Cal. Health & Safety Code § 1397. After requesting an administrative hearing, the CAPA requires respondents to file a notice of defense, and permits them to "present [any] new matter by way of defense." Cal. Gov't Code § 11506(a)(5). This provided Delta ample opportunity to raise both state and federal defenses, including its ERISA preemption claim in the administrative hearing. See, e.g., Takahashi v. Board of Trustees of Livingston Union Sch. Dist., 783 F.2d 848, 852 (9th Cir.1986) (interpreting § 11506(a)(5) and holding that plaintiff could have raised her federal constitutional claims in the state administrative hearing).
 
 
 31
 Delta avers that it "likely could not have raised a defense" based on ERISA preemption in the administrative hearings. Although Delta does not elaborate, it might be referring to section 3.5 of the California Constitution which precludes administrative agencies from declaring a state statute unenforceable on the basis that federal law prohibits the enforcement of that statute. Cal. Const. Art. III, § 3.5; Southern Pacific Transp. Co. v. Public Utilities Comm'n of California, 716 F.2d 1285, 1290-91 (9th Cir.1983). This provision, however, does not prevent a party from raising the issue to the administrative agency in order to preserve the issue for review in the California state courts. See Southern Pacific, 716 F.2d at 1291.
 
 
 32
 The record demonstrates that Delta raised and preserved the ERISA preemption issue in the administrative hearings. On March 15, 1996, Delta filed a Preconference Statement with the administrative law judge. In that statement Delta noted that a federal district court had already found that the Commissioner's Order was preempted by ERISA in so far as the Order applied to ERISA-governed plans, but that Delta was preserving the ERISA preemption issue in the administrative proceedings as well.
 
 
 33
 The hearings took place on 17 days between August 20, 1996 and November 25, 1996. On November 5th, Delta mentioned the ERISA issue for the first time at the hearings:
 
 
 34
 Mr. Weiss: Your Honor, there is an outstanding issue in this case as to whether the Commissioner's order is preempted in part by the federal ERISA law. The Department has declined to agree with Delta that ERISA does preempt part of the cease and desist order. In order for us to pursue that issue back in the superior court, we need to present the facts here.
 
 
 35
 Mr. Weiss further stated that the Commissioner "should not be surprised" that Delta was raising the ERISA issue since Delta "raised [the] issue in our hearing briefs that [it] submitted before [the] administrative hearing started ... and raised it earlier, as well as in [its] pre-hearing briefs."
 
 
 36
 On both November 5th and 6th during the hearings, the administrative law judge specifically concluded that Delta preserved the ERISA issue should it decide to appeal the administrative law judge's decision to the California superior court. Thus, even if Delta could not have litigated the ERISA issue before the administrative law judge, Delta's ability to raise the issue there, develop the factual record, and then to litigate the issue in state judicial proceedings suffices to satisfy the third prong of the Younger test. See Kenneally v. Lungren, 967 F.2d 329, 332 (9th Cir.1992) (citing Ohio Civil Rights Comm'n v. Dayton Christian Sch. Inc., 477 U.S. 619, 629, 106 S.Ct. 2718, 2723-24, 91 L.Ed.2d 512 (1986)).
 
 
 37
 Delta argues in the alternative that bringing a suit in federal court allowed it to seek relief more quickly than had it pursued its claim through the state administrative processes and courts, and allowed it to seek relief before becoming a defendant in an enforcement suit brought by the Commissioner. While both assertions may be true, such factors simply are irrelevant to application of the Younger doctrine.[6]
 
 
 38
 The record amply demonstrates that Delta had the opportunity to and in fact raised its ERISA preemption defense in the state administrative proceedings, preserving the issue for review in state court. The third prong of the Younger test accordingly is satisfied.
 
 C.
 
 39
 We have two final observations. First, we note that an ERISA preemption claim is not one that may be brought only in federal court; rather, state courts amply are able to determine whether a state statute or order is preempted by ERISA. See Transamerica Occidental Life Ins. Co. v. DiGregorio, 811 F.2d 1249, 1255 n. 5 (9th Cir.1987). There was therefore no jurisdictional bar to Delta pursuing its ERISA defense in the state administrative and state court proceedings. The determination whether to abstain under Younger is not affected by the fact that a party has raised a federal preemption issue in the federal court, and does not turn on whether the state law in question ultimately is preempted under ERISA. See Fresh Int'l, 805 F.2d at 1361.
 
 
 40
 Second, contrary to Delta's assertion, the application of the Younger doctrine is not affected by Rockwell's status as a party to the federal court proceedings, but not to the state administrative hearings. Delta claims that the absence of Rockwell or other ERISA plan sponsors from the administrative hearings meant that the administrative law judge had no opportunity to consider whether plan sponsors' ERISA rights were affected by the Commissioner's Order. However, as the Commissioner noted, Rockwell and other sponsors could have intervened in the administrative proceedings. Further, in this case, Delta amply presented and preserved the ERISA preemption issue before the administrative law judge. That Rockwell did not choose to participate in the administrative hearings is irrelevant to a determination of whether Younger abstention applies.
 
 III.
 
 41
 Because the state proceedings were ongoing at the time the district court complaint was filed, implicate important state interests, and provided an opportunity for Delta to raise federal questions, Younger abstention is required in this case. The district court erred when it refused to abstain. We therefore reverse its ruling and remand with instructions to dismiss. Because we remand with direction to dismiss, we need not address the merits of the ERISA preemption claim.
 
 
 42
 REVERSED AND REMANDED with instruction to dismiss.
 
 
 
 *
 Honorable Kim M. Wardlaw, United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 Delta essentially argues that its practices do not violate the Knox-Keene Act, and that the Order was overbroad
 
 
 [2]
 According to Delta, the Order interferes with ERISA-governed benefit plans by effectively rewriting the terms of both its plan contracts and Participating Dentist Agreements to allow copayment waivers. The Order thus requires the plan to recognize state-licensed supplemental coverage as a complete substitute for patient copayments
 The Commissioner argues that neither the benefits contract between Rockwell and Delta nor the provider contract require the Patient Copayment to come from any specific source. Moreover, no rule or contract prevents a patient from utilizing more than one benefits plan to satisfy a copayment obligation. As such, the Commissioner argues that groups like SmileCare merely cover costs in a modified way; the percentage Delta pays covers a majority of SmileCare's operational costs, while the patient's premium covers the rest.
 
 
 [3]
 The Commissioner had argued that Delta violated sections 1371.2 and 1367(h) of the Knox-Keene Act in a number of respects. The administrative law judge rejected several of the Commissioner's grounds, but upheld others
 
 
 [4]
 Although the Order was amended, Delta maintains that the Order as amended also impermissibly restricts its ERISA-governed plans
 
 
 [5]
 The state administrative proceedings concerned all of Delta's health care plans. The proceedings and the final resolution thus affected both Delta's ERISA-governed plans and its non-ERISA-governed plans
 
 
 [6]
 Delta also asserts the unexceptional proposition that "it is not uncommon for parties seeking to raise federal ERISA preemption issues to do so in federal court." Delta cites Alaska Airlines v. Oregon Bureau of Labor, 884 F.Supp. 393 (D.Or.1995), aff'd, 122 F.3d 812 (9th Cir.1997), in support of that proposition. Of course parties may seek to litigate ERISA preemption issues in federal court (accepting the risk that doing so may prevent them from raising state law claims which require exhaustion of state administrative remedies). However, Alaska Airlines involved a situation in which the parties sought relief directly from federal court. There was no on-going state proceeding at the time, unlike the situation in the instant case